UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

OXFORD AVIATION, INC., ET AL.,  )
                                )
           PLAINTIFFS           )
                                )
v.                              )     No. 2:10-cv-444-DBH
                                )
GLOBAL AEROSPACE, INC.,         )
                                )
           DEFENDANT            )

### DECISION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This is a dispute over whether an insurance company, Global Aerospace, Inc. ("the Insurer"), has the duty to defend its insured, Oxford Aviation, Inc., in an underlying lawsuit pending against Oxford Aviation in Oxford County Superior Court. The plaintiffs, Oxford Aviation and certain of its officers and employees (collectively, "Oxford Aviation"),[1] seek a declaration that the Insurer has a duty to defend Oxford Aviation in the state court lawsuit, and that its failure to do so constitutes a breach of contract. Compl. ¶¶ 11, 13 (Docket Item 2-1). Oxford Aviation also claims that the Insurer committed an unfair claims settlement practice in violation of Maine statutory law and seeks attorneys' fees. Id. ¶ 15. The parties have cross-moved for summary judgment. Pls.' Mot. for Summ. J. (Docket Item 11); Def.'s Opp'n to Pls.' Mot.

---

[1] The individual plaintiffs are defendants in the underlying litigation in state court. Compl. ¶ 3 (Docket Item 2-1). They were also either officers or employees of Oxford Aviation at the time of the events giving rise to the state court litigation. Id.

for Summ. J. and Cross-Motion for Summ. J. ("Def.'s Opp'n and Cross-Motion") (Docket Item 16). The plaintiffs' motion is **DENIED** and the defendant's motion is **GRANTED**.

## BACKGROUND

### (1) *Procedural History*

Oxford Aviation refurbishes and repairs aircraft. Compl. ¶ 2. Airlarr, Inc. filed the Oxford County lawsuit against Oxford Aviation alleging, among other things, that Oxford Aviation's installation of products on Airlarr's aircraft "was seriously deficient and did not meet the terms of the agreement between the parties." Airlarr Compl. ¶ 1 (Docket Item 13-1); DSMF ¶ 30; Pls.' Resp. to Def.'s Additional Statement of Material Facts ("Pls.' Resp.") ¶ 30 (Docket Item 21). Global Aerospace insured Oxford Aviation under an "Aviation General Liability Insurance" policy during the relevant period. Notice of Removal ¶ 6 (Docket Item 1); Pls.' Statement of Material Facts ("PSMF") ¶ 6 (Docket Item 12); Def.'s Opposing Statement of Material Facts with Additional Facts Not in Dispute ("DSMF") ¶ 6 (Docket Item 17). Oxford Aviation notified Global Aerospace that it had been sued and requested Global Aerospace to defend it. PSMF ¶ 7; DSMF ¶ 7. Global Aerospace disclaimed coverage. PSMF ¶ 8; DSMF ¶ 8.

Oxford Aviation then filed this coverage lawsuit in state court. Global Aerospace removed the lawsuit to federal court based upon diversity of citizenship. Notice of Removal ¶ 5.

2

### *(2)   The Underlying Complaint*

In the underlying complaint, Airlarr alleges a number of defects in the products and work supplied by Oxford Aviation to the Airlarr aircraft seeking recovery for (1) breach of contract; (2) breach of express warranties; (3) breach of implied warranty of merchantability; (4) breach of implied warranty of fitness for a particular purpose; (5) violation of the Maine Unfair Trade Practices Act; (6) unjust enrichment; (7) promissory estoppel; (8) fraud; (9) negligent misrepresentation; (10) violation of deceptive trade practices in violation of Maine statutory law; and (11) punitive damages. Airlarr Compl. ¶¶ 23-92. The alleged defects include improperly installed products on the aircraft, numerous painting errors, scratches, an air leak around the rear door, inoperable lights, and a cracked turbocharger. Id. ¶ 18. Airlarr also alleges that the plane's side window cracked during flight after leaving Oxford Aviation and attributes the crack to "negligence and faulty performance of Oxford Aviation." Id. ¶ 17. Airlarr made no claim of personal injury and no claim of damage to any property other than the aircraft itself. DSMF ¶¶ 36, 37; Pls.' Resp. ¶¶ 36, 37.

### *(3)   The Insurance Policy*

The Aviation General Liability Insurance Policy (the "Policy") includes four types of coverage, two of which are relevant here: Coverage A, "Bodily Injury and Property Damage Liability" and Coverage D, "Hangarkeepers' Liability." Policy at 1-4 (Docket Item 13-4).

Coverage A provides:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . property

>damage to which this insurance applies resulting from your aviation operations . . .
>
>This insurance applies to . . . property damage only if (1) The . . . property damage is caused by an occurrence and takes place in the coverage territory . . .

Policy at 1; PSMF ¶ 10; DSMF ¶ 10.  "Occurrence" is defined in the Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  Policy at 20; PSMF ¶ 12; DSMF ¶ 12.  Coverage A expressly excludes certain categories of damage.  Policy at 1-4; PSMF ¶ 14; DSMF ¶ 14.  Among them are:

>(j) Property damage to: . . . .(4) Personal property in the care, custody or control of the insured; . . . (6) That particular part of any property that must be restored, repaired or replaced because your work was incorrectly performed on it.
>
>(k) Property damage to your product arising out of it or any part of it;
>
>(l) Property damage to your work arising out of it or any part of it and included in the products-completed operations hazard;
>
>(m) Property damage to impaired property or property that has not been physically injured, arising out of (1) a defect, deficiency, inadequacy or dangerous condition in your product or your work; or (2) a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.  This exclusion (m) does not apply to the loss of use of other property arising out of a sudden and accidental physical injury to your product or your work after it has been put to its intended use.

Id.  "Your product" is defined in the Policy to include "[a]ny goods or products, other than real property, manufactured, sold, handled or disposed of by [Oxford Aviation]."  Policy at 21; PSMF ¶ 12; DSMF ¶ 12.  "Products-completed operation hazard" is defined in the Policy to include "all . . . property damage

4

occurring away from premises you own or rent and arising out of your product or your work. . . ." Policy at 20; DSMF ¶ 25; Pls.' Resp. ¶ 25. "Impaired property" is defined as:

> tangible property, other than your product or your work, that cannot be used or is less useful because (a) [i]t incorporates your product or your work that is known or thought to be defective, deficient, inadequate or dangerous; or (b) [y]ou have failed to fulfill the terms of a contract or agreement; if such property can be restored to use by: (c) [t]he repair, replacement, adjustment or removal of your product or your work; or (d) [y]our fulfilling the terms of the contract or agreement.

Policy at 17-18; PSMF ¶ 8; DSMF ¶ 8.

Under the Hangarkeepers' Liability coverage (Coverage D), Global Aerospace agrees to "pay those sums that the insured becomes legally obligated to pay as damages because of loss to aircraft . . . occurring while such aircraft is in the care, custody or control of the insured for safekeeping, storage, service or repair." Policy at 7; PSMF ¶ 11; DSMF ¶ 11. By the express terms of the Policy, Coverage D does not apply to the "insured's liability under any agreement to be responsible for loss," "[l]oss to your work arising out of it or any part of it," and "[l]oss to aircraft while in flight." Policy at 7; DSMF ¶ 29; Pls.' Resp. ¶ 29. The Policy defines "Loss" as "an accident resulting in direct damage to tangible property, including continuous or repeated exposure to substantially the same general harmful conditions." Policy at 19; PSMF ¶ 12; DSMF ¶ 12.

## ANALYSIS

Under Maine law, whether an insurer has a duty to defend is determined by comparing the allegations in the underlying complaint with the provisions of

the insurance policy. York Golf and Tennis Club v. Tudor Ins. Co., 845 A.2d 1173, 1175 (Me. 2004). "The duty to defend arises if there is any potential basis for recovery against the insured and the recovery is an insured risk." Id. See also Auto Europe, LLC v. Conn. Indemnity Co., 321 F.3d 60, 66 (1st Cir. 2003) ("If the complaint shows even a possibility that the events giving rise to it are within the policy coverage, the insurer must defend the suit.") (quoting Mass. Bay Ins. Co. v. Ferraiolo Constr. Co., 584 A.2d 608, 609 (Me.1990)). Maine law extends the insurer's duty to defend to claims "that could be developed either legally or factually at trial so as to fall within the policy's coverage," Auto Europe, LLC, 321 F.3d at 68, but a court may not "speculate about causes of action that were not stated." York Golf and Tennis Club, 845 A.2d at 1175.

***Coverage A***

Global Aerospace argues that its Policy does not provide coverage for the claims in the underlying state lawsuit against Oxford Aviation because Airlarr's complaint "does not present any claim for 'physical injury to tangible property,'" does not allege damages that arose from an "accident," and because all of the alleged damages relate to improper and inadequate repairs by Oxford Aviation and therefore fall within the scope of the Policy's exclusions. Def.'s Opp'n and Cross-Motion at 12. Oxford Aviation concedes that the Policy does not cover *all* of the claims in the underlying complaint, but argues that some are potentially within the Policy's coverage and that it is therefore entitled to a defense in the underlying lawsuit.

6

I agree with Global Aerospace that "each of the Counts asserted in the Airlarr Complaint relate entirely to deficiencies in Oxford Aviation's work and product, and thus are excluded from coverage by operation of [the Policy's Exclusions]." Def.'s Opp'n and Cross Motion at 12. Exclusion (j) excludes all property damage to "personal property in the care, custody, or control of the insured," applicable while Oxford Aviation had the aircraft. Policy at 3-4; PSMF ¶ 14; DSMF ¶ 14. Exclusion (k) precludes coverage for property damage to "your product arising out of it or any part of it" and applies to the alleged defects in the products that Oxford Aviation sold and installed in Airlarr's aircraft. Policy at 4; PSMF ¶ 14; DSMF ¶ 14. (The Airlarr Complaint provides a list of these alleged defects in paragraph 18. Airlarr Compl. ¶ 18 (identifying defects and substandard work in the "products and work supplied by Oxford Aviation").) Exclusion (l) precludes coverage for "[p]roperty damage to your work arising out of it or any part of it and included in the products-completed operations hazard." Id. "Products-completed operations hazard" includes all "property damage occurring away from premises you own or rent," here any damages after Airlarr took the aircraft from Oxford Aviation. Policy at 20; DSMF ¶ 25; Pls.' Resp. ¶ 25. The Policy defines "[y]our work" as "[w]ork or operations performed by you or on your behalf" and as "[m]aterials, parts or equipment furnished in connection with such work or operations." Policy at 21; PSMF ¶ 12; DSMF ¶ 12.

Finally, exclusion (m) excludes "[p]roperty damage to impaired property or property that has not been physically injured, arising out of a defect, deficiency, inadequacy or dangerous condition in your product or your work."

7

Policy at 4; PSMF ¶ 14; DSMF ¶ 14. "Impaired property means tangible property, other than your product or your work, that cannot be used or is less useful because (a) it incorporates your product or your work that is known or thought to be defective, deficient, inadequate or dangerous, or (b) you have failed to fulfill the terms of a contract or agreement . . . ." Policy at 17-18; PSMF ¶ 8; DSMF ¶ 8. This exclusion precludes coverage for the alleged crack in the side window of the Airlarr plane that occurred during flight after leaving Oxford Aviation. The Airlarr Complaint specifically alleges that the crack arose from a deficiency in Oxford Aviation's work. Compl. ¶ 17 (crack in the plane's side window "was attributable to negligence and faulty performance of Oxford Aviation").

Together, these four exclusions remove coverage for all the damages that Airlarr is seeking from Oxford Aviation on account of its repairs to the aircraft.

***Coverage D***

Coverage D covers claims for accidental damage to aircraft while the aircraft is in the care, custody, or control of the insured for service or repair. It specifically excludes coverage for defects in the repairs themselves, the subject of Airlarr's Complaint. Although Oxford Aviation agrees that the Hangarkeepers' Liability coverage is designed to cover claims for accidental damage, it argues that there is no basis to conclude that some of the alleged items of physical damage (specifically, the cut in the stabilizer boot, hole in the antenna, and cracking in the turbocharger) actually resulted from defects in the repairs it performed, and therefore that there might be hangarkeepers' coverage. Pls.' Mot. for Summ. J. at 14; Pls.' Reply at 11-12 (Docket Item 20).

8

Oxford Aviation cites Auto Europe, LLC, 321 F.3d at 68, where, the First Circuit held that even "where a narrow reading of the complaint's factual allegations might preclude coverage," Maine law entitles the insured to a defense if the "alleged cause of action is sufficiently broad that a modified version of the facts could be developed at trial to show liability."[2]  But Airlarr's cause of action in this underlying lawsuit makes no claim that Oxford Aviation is responsible for property damage not caused by its repairs and services. Instead, the litany of counts in the underlying complaint—*e.g.*, breach of contract, breach of express warranties, fraud—all relate to Airlarr's allegation that Oxford Aviation performed substandard work, and Maine Law is clear that I cannot consider unasserted causes of action.  York Golf and Tennis Club, 845 A.2d at 1175.  See also Auto Europe, LLC, 321 F.3d at 68 (no duty to defend "when the cause of action alleged as the basis for liability . . . include[s] elements that would foreclose coverage").  Thus, I find that the Global Aerospace does not have a duty to defend Oxford Aviation under the Hangarkeepers' Liability coverage.

## CONCLUSION

Based upon the Policy language and the underlying complaint by Airlarr, I find that there is no coverage under either Coverage A (Bodily Injury and Property Damage Liability) or Coverage D (Hangarkeepers' Liability).

---

[2] The First Circuit then found a duty to defend based on the possibility that the facts as developed at trial would establish a non-intentional violation of the Maine Unfair Trade Practices Act, even though the underlying complaint only alleged intentional fraud (intentional fraud was within an exclusion of the relevant insurance policy). Auto Europe, LLC, 321 F.3d at 66-68 (stating that "even if a jury rejected the . . . plaintiffs' precise theory deliberate misrepresentation, they would retain the possibility of recovery . . .").

9

Accordingly, I **DENY** the plaintiffs' motion and **GRANT** the defendant's motion for summary judgment. As a result, Oxford Aviation's request for attorney fees in connection with unfair claims settlement practice is **MOOT**.

**SO ORDERED.**

**DATED THIS 14TH DAY OF SEPTEMBER, 2011**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**